IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:16-cr-00162-JO |
| | ) | No. 3:19-cr-00344-JO |
| v. | ) | |
| | ) | |
| JOSE RAMON SANCHEZ-RAMIREZ, | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Defendant Jose Ramon Sanchez-Ramirez is charged with one count of illegal reentry in violation of 8 U.S.C. § 1326(a). ECF No. 1. Defendant now moves to dismiss the indictment, contending that his removal in 2009 was invalid because his due process rights were violated. ECF No. 23. For the following reasons, I deny Defendant's Motion to Dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was born in 1983 in Mazatlan, Sinaloa, Mexico. Gov't Resp., Ex. 3, at 1; Def.'s Mot., Ex. A (Def.'s Decl.) ¶ 5. Growing up in Mexico, Defendant spoke only Spanish. Def.'s Decl. ¶ 3.

Defendant states that when he was "about eight years old, a large group of armed men burst into my house." Def.'s Decl. ¶ 7. The men threatened to kill Defendant's father. They hit Defendant's father with a metal pipe, "splitting his head open." Def.'s Decl. ¶ 7. While

1   -   OPINION AND ORDER

Defendant's father defended himself, Defendant and the rest of his family fled. The men then spared Defendant's father. Defendant states that the attack "was motivated by revenge and because they knew they could prey on poor and vulnerable families." Def.'s Decl. ¶ 8.

Defendant first came to the United States in 1999, when he was 17 years old. Def.'s Decl. ¶ 11. He worked in Phoenix, Arizona, first for his uncle's landscaping business and later in construction. Def.'s Decl. ¶¶ 12, 14. In about 2001, he moved to the Los Angeles, California, area, working at various jobs.

While living in the Los Angeles area, Defendant met his ex-wife, Yajaira Hernandez, a citizen of Mexico. They were married in 2006. Def.'s Decl. ¶ 18. Defendant's first son, Brandon, was born in Los Angeles in 2007. Brandon is a United States citizen. Def.'s Decl. ¶ 21. Defendant has two more children, Briana, born in 2011, and Ryan, born in 2016. Both are United States citizens. Def.'s Decl. ¶¶ 22, 23.

In June 2008, Defendant was convicted in the Superior Court of California, County of Los Angeles, of possession for sale of heroin in violation of Cal. Health & Safety § 11351. Gov't Resp., Ex. 1 at 1. The conviction was based on a 2006 incident, in which Defendant was arrested with 5.91 grams of heroin, packaged in 40 small "bindles." Gov't Resp., Ex. 18, at 6. Defendant received a sentence of two years in prison.

In July 2008, Defendant was convicted of possession for sale of heroin, based on a 2008 incident. Gov't Resp., Ex. 2. Defendant was again sentenced to two years in prison.

In August 2008, an agent from Immigration and Customs Enforcement (ICE) interviewed Defendant at a state prison in Tehachapi, California. Gov't Resp., Ex. 3. The ICE agent reported that Defendant was a citizen and native of Mexico who had entered the United States near Phoenix in May 1999, without being admitted or paroled by an immigration inspector. The

agent reported that Defendant was married to a Mexican citizen, and that Defendant's parents were Mexican and lived in Mexico. During the interview, Defendant stated "that he has no fear of torture or persecution if returned to his country of citizenship, Mexico." Gov't Resp., Ex. 3, at 2. The interview was apparently conducted in Spanish.

In September 2008, ICE prepared a Notice of Intent to Issue a Final Administrative Removal Order (Notice of Intent) for Defendant. Gov't Resp., Ex. 4, at 1. The Notice of Intent stated that Defendant was deportable because he had been convicted of aggravated felonies, the heroin convictions.

In 2009, Defendant was transferred from state custody to ICE custody. On June 11, 2009, an ICE agent served Defendant with the Notice of Intent prepared the previous September. Gov't Resp., Ex. 4, at 2. The certificate of service form for the Notice of Intent states that the ICE agent "explained and/or served this Notice of Intent to the alien in the English language." Gov't Resp., Ex. 4, at 2. The certificate of service form has boxes checked indicating (1) the alien does not wish to contest or request withholding of removal, (2) the alien admits the allegations and charges in the Notice of Intent and acknowledges he is not eligible for any form of relief from removal, (3) waives his right to rebut and contest the charges, (4) wishes to be removed to Mexico, and (5) understands he has the right to remain in the United States for 14 days to seek judicial review but waives that right. Gov't Resp., Ex. 4, at 2.

Defendant states although he does not recall seeing the Notice of Intent, he does remember ICE agents showing him "a piece of paper and telling [him] to sign it." Def.'s Decl. ¶¶ 26, 27. Defendant states that the ICE agents "spoke almost exclusively in English. One ICE agent spoke a few words and broken phrases in Spanish. The ICE agents did not bring an interpreter." Def.'s Decl. ¶ 28. The agents put the Notice of Intent in front of Defendant without

3    -    OPINION AND ORDER

reading it to him in Spanish or English. Def.'s Decl. ¶ 29. Defendant states that in 2009, he did not read or write English, and understood only "a few basic words or phrases" in English. Def.'s Decl. ¶ 4. The government acknowledges that "Spanish interpreters used during other legal proceedings against defendant indicate[] that defendant needed the assistance of a Spanish interpreter in other legal forums." Gov't Resp. 7 n.1; *see, e.g.*, Def.'s Mot., Ex. G (transcript of June 2008 guilty plea in Superior Court of California showing that an interpreter was used for Defendant during the hearing).

Defendant states, "I understood the ICE agents when the agents told me that I was being deported. The agents told me to sign the document and pointed where to sign. I recognized that I had to sign the form. I believed the document to be my deportation papers." Def.'s Decl. ¶ 30. Defendant does not remember filling out the Notice of Intent form, and he believes that the ICE agents did so. He states that the agents did not explain his rights to him in Spanish or advise him of options other than agreeing to immediate removal. Def.'s Decl. ¶ 36. The agents did not tell Defendant that he had a right to consult with an attorney, or give him a chance to call an attorney before he signed the Notice of Intent. Def.'s Decl. ¶ 37. Defendant states, "The ICE agents did not tell me that I could challenge my administrative removal in court, that I could contest my removal, that I could make arguments to stay in the United States," and did not explain why he was being deported. Def.'s Decl. ¶¶ 38, 40. The agents also did not tell Defendant that he could seek to defer removal and apply for relief under the Convention Against Torture. Defendant now states, "If I had known I could have acquired an attorney and filed to defer my removal, I would have." Def.'s Decl. ¶ 42.

Later that day, June 11, 2009, Defendant was administratively removed from the United States to Mexico. Gov't Resp., Ex. 5. He walked across the border into Mexico near San

Ysidro, California.  Gov't Resp., Ex. 7, at 2.  The June 2009 administrative removal is the focus of Defendant's current motion to dismiss.

In May 2010, ICE located Defendant in a Los Angeles jail.  Gov't Resp., Ex. 7.  An ICE agent questioned Defendant in Spanish, obtaining a signed statement under oath that Defendant had illegally reentered the United States in June 2009, shortly after his removal.  Gov't Resp., Ex. 8.  In the sworn statement, Defendant denied having any fear of persecution or torture if he was removed from the United States.  *Id.*  That day, ICE issued a decision to reinstate the 2009 removal order.  Gov't Resp., Ex. 9.  Defendant did not contest the decision.  In November 2010, defendant was convicted in the Central District of California of illegal reentry in violation of 8 U.S.C. § 1326(a), and was sentenced to 30 months in prison.  Gov't Resp., Ex. 10.  After serving his sentence, in August 2012, Defendant was removed at Nogales, Arizona.

In December 2015, ICE located Defendant in the Multnomah County Jail, but he was released before ICE could take him into custody.  Gov't Resp. 4; Ex. 12, at 2.  In April 2016, ICE again located Defendant in Portland and arrested him.  Gov't Resp., Ex. 12, at 2.  During an interview with ICE agents, Defendant again stated that he had no fear of persecution or torture if removed from the United States.  Gov't Resp., Ex. 12, at 3.  ICE issued a decision to reinstate the 2009 order of removal.  Gov't Resp., Ex. 13.  Defendant stated that he did not want to contest the decision.

In March 2017, Defendant pleaded guilty in this court to illegal reentry in violation of 8 U.S.C. § 1326(a).  I sentenced Defendant to 37 months in prison.  Gov't Resp., Ex. 14.[1]

---

[1] The government states that Defendant was convicted in Multnomah County Circuit Court on June 27, 2017, for delivery of heroin.  Gov't Resp. 4.  In support of this statement, the government attaches a criminal judgment issued by Multnomah County Circuit Court on June 27, 2017, No. 15CR52626, for a defendant named Jared Dellanos Larranaga.  Gov't Resp., Ex. 15.  The state court judgment states that the sentence "shall be concurrent" with Defendant's case in this court, 3:16-cr-00162-JO.  It is unclear why the state court judgment referred to Defendant's federal case in a judgment of conviction for a defendant who has a completely different name and birthdate.

5   -   OPINION AND ORDER

In December 2018, after completing his federal sentence, Defendant was interviewed by ICE agents. Gov't Resp., Ex. 16. He told the agents he did not fear persecution or torture if returned to Mexico. Gov't Resp., Ex. 16, at 2. Defendant was then removed based on the 2009 removal order, crossing the border on foot at Laredo, Texas. Gov't Resp., Ex. 17.

In July 2019, ICE agents located Defendant in Clackamas, Oregon. In August 2019, a federal grand jury returned an indictment charging Defendant with illegal reentry, the operative indictment here. ECF No. 1. In addition, an arrest warrant was issued based on a petition alleging Defendant had violated the conditions of supervised release from the 2017 conviction in this district. On July 31, 2020, Defendant filed the motion to dismiss at issue here.

## DISCUSSION

### I. Challenging the Validity of the Underlying Removal Order

Defendant is charged with violating 8 U.S.C. § 1326(a), which imposes criminal sanctions on "any alien who--(1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless . . . the Attorney General has expressly consented." A defendant may "collaterally attack the underlying removal order that serves as a predicate" to an alleged violation of § 1326(a). *United States v. Valdez-Novoa*, 780 F.3d 906, 913 (9th Cir. 2015) (citing 8 U.S.C. § 1326(d)). Here, the "underlying removal order" is the 2009 order.

To successfully challenge the validity of a removal order, the alien must demonstrate that (1) he exhausted administrative remedies; (2) "deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). A removal order is "fundamentally unfair" if the defendant's due process rights were violated during the underlying deportation

proceeding and the defendant was prejudiced by the due process violations. *Valdez-Novoa*, 780 F.3d at 913. The defendant has the burden of showing prejudice. *Id.* at 917.

Here, for purposes of Defendant's motion to dismiss, the government assumes that Defendant's due process rights were violated during the 2009 removal, and that Defendant exhausted his administrative remedies and was deprived of the opportunity for judicial review. Gov't Resp. 7. In light of the government's position on the due process violation, the remaining issue for this court to resolve is whether "the entry of the [2009 removal] order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

## II. Presumed Prejudice

The parties dispute whether this court should presume prejudice because of due process violations at the 2009 removal proceeding, in particular the failure to notify Defendant of his right to counsel at no expense to the government. I conclude that under these facts, this court is not compelled to presume prejudice.

Although "an absolute denial of an alien's right to representation during immigration proceedings might be presumed to be prejudicial," the Ninth Circuit has held "that simply failing to properly advise the alien of his right to counsel was *not* per se prejudicial." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1048 (9th Cir. 2012) (original emphasis) (citing *United States v. Cerda-Pena*, 799 F.2d 1374, 1377 n.3 (9th Cir. 1986) ("While recognizing that an outright refusal to allow an alien the opportunity to obtain representation may be such an egregious violation of due process so as not to require any further showing of prejudice, this Court believes that an immigration judge's failure adequately to apprise an alien of his or her right to representation should only invalidate the deportation if actual prejudice is shown, as is the case with other violations of INS regulations and of due process")); *see also United States v.*

*Gonzalez-Flores*, 804 F.3d 920, 929 (9th Cir. 2015) ("A removal order is 'fundamentally unfair' for purposes of § 1326(d)(3) only if the alien 'suffered prejudice as a result of the defects' in the deportation proceeding . . . ") (citation omitted); *United States v. Valdavinos-Torres*, 704 F.3d 679, 690 (9th Cir. 2102) ("even if Valdavinos established his removal proceedings violated his due process right to counsel, he cannot establish the prejudice required for a collateral attack under Section 1326(d)(3)") .

In arguing for a presumption of prejudice, Defendant cites *Gomez-Velazco v. Sessions*, 879 F.3d 989 (9th Cir. 2018).  There, ICE officers determined that the petitioner, then confined in a county jail, was eligible for administrative removal because, like Defendant here, he was not a United States citizen, had not been lawfully admitted for permanent residence, and had been convicted of an aggravated felony.  879 F.3d at 992.  After taking the petitioner into custody, the ICE officers served a Notice of Intent on him and attempted to take a sworn statement from him. The petitioner refused to give a statement without his attorney present.  *Id.*  The officers knew the petitioner had retained an attorney because two months earlier, the petitioner's attorney had notified them of the petitioner's pending application for a "U-visa."[2] *Id.*  Nevertheless, the petitioner then admitted the allegations in the Notice of Intent, conceded he was removable as charged, and denied fear of prosecution or torture in Mexico.  *Id.*  He did, however, decline to waive the 14-day waiting period.  During the 14-day period, his attorney filed a petition for review in the Ninth Circuit and successfully obtained a stay of removal pending resolution of the petition.  *Id.*

---

[2] An alien may obtain a U-visa by persuading DHS that "'it is in the public or national interest' to allow him to remain in the United States." *Gomez-Velazco*, 879 F.3d at 995 (quoting 8 C.F.R. § 212.17(b)(1)); 8 U.S.C. § 1101(a)(15)(U).

8  -  OPINION AND ORDER

The Ninth Circuit rejected the petitioner's argument that "prejudice should be conclusively presumed and automatic reversal should follow" whenever the right to counsel is denied. *Id.* at 993. The Ninth Circuit held that because the petitioner was able to consult with counsel before execution of the removal order, mitigating the damage done by the petitioner's uncounseled admissions, the court did not need to speculate on different decisions counsel might have made if present at the initial proceeding. *Id.* at 994. The court ultimately determined that the petitioner was not prejudiced by the due process violation.

Defendant contends that *Gomez-Velazco* supports his argument for presuming prejudice because unlike the petitioner there, Defendant did not receive any assistance of counsel during the administrative removal process. In resolving this issue, I find the reasoning of the dissent in *Gomez-Velazco* persuasive. The dissent cited a Ninth Circuit decision holding that an alien denied the statutory right to be represented by counsel "'need not also show that he was prejudiced by the absence of the attorney.'" *Gomez-Velazco*, 879 F.3d at 997 (Navarro, J., dissenting) (quoting *Montez-Lopez v. Holder*, 694 F.3d 1085, 1093-94 (9th Cir. 2012)). However, the dissent then noted that "the *Montez-Lopez* court purposefully distinguished pure immigration proceedings from collateral attacks on a removal order in a § 1326 illegal reentry criminal case, the latter of which require[] prejudice specifically because of 'the limitations on criminal defendants' right to collaterally attack the result of a prior proceeding.'" *Id.* at 997-98 (quoting *Montez-Lopez*, 694 F.3d at 1093). Here, Defendant has not shown that a presumption of prejudice should apply for his collateral attack on the 2009 removal proceedings.

## III. Actual Prejudice

Because prejudice is not presumed, Defendant must show that he suffered actual prejudice because of due process violations at the 2009 removal proceeding. To prove actual

prejudice, a defendant must show "'plausible grounds' on which he could have been granted relief from removal." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049 (9th Cir. 2012) (quoting *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010)). To show "plausible grounds" for relief, there must be "some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *Id.* at 1050. If a defendant would be "'barred from receiving relief, his claim is not "plausible."'" *United States v. Gomez*, 757 F.3d 885, 898 (9th Cir. 2014) (quoting *United States v. Gonzales-Valerio*, 342 F.3d 1051, 1056 (9th Cir. 2003)).

Here, Defendant contends that he has shown actual prejudice because in 2009 he had plausible grounds for being eligible for two types of relief: (1) withdrawal of his constructive application for admission[3] to the United States, allowing his voluntary return to Mexico instead of removal, and (2) deferral of removal under the Convention Against Torture.

### A. Withdrawal of Application for Admission

Defendant contends that he plausibly could have been allowed to withdraw his constructive application for admission to the United States, in lieu of his 2009 administrative removal. Def.'s Mot. 25. However, Defendant's 2008 convictions for possession of heroin with intent to distribute are aggravated felonies. *See Lopez v. Sessions*, 901 F.3d 1071, 1074 (9th Cir. 2018). Because Defendant was an "aggravated felon subject to expedited removal, [he] was statutorily ineligible for any discretionary relief" when he was removed in 2009. *United States v. Calderon-Segura*, 512 F.3d 1104, 1108 (9th Cir. 2008) (citing 8 U.S.C. § 1228(b)(5)). I

---

[3] Although Defendant did not file an application for admission to the United States, an alien "present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a).

conclude that Defendant had no plausible grounds to seek withdrawal of his constructive application for admission.

### B. Deferral of Removal Under the Convention Against Torture

#### 1. Legal Standards for Claims Under the Convention Against Torture

Defendant contends he has shown "evidence of harm and threats of harm directed at his family which were sufficiently likely to occur at the time of removal to constitute plausible grounds for relief." Def.'s Reply 10. A person seeking deferral of removal under the Convention Against Torture (also referred to as CAT), has the burden of proof "'to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Medina-Rodriguez v. Barr*, ___ F.3d ___, 2020 WL 6373434, at *8 (9th Cir. Oct. 30, 2020) (quoting 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a)). "'Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person' but 'does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)-(2)). The torture must be "'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

"The ultimate inquiry in evaluating whether an applicant is entitled to CAT relief is whether, upon consideration of all relevant evidence relevant [*sic*], the applicant has met her burden to establish that it is more likely than not that she will suffer future torture if removed to the proposed country of removal." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1188 (9th Cir.

11 -   OPINION AND ORDER

2020) (citing 8 C.F.R. § 1208.16(c)(2)-(3)).  Because relief under the Convention Against Torture is "forward-looking," proof of past torture is not enough for relief unless the applicant has presented sufficient evidence that he or she is more likely than not to be tortured again. *Barajas-Romero v. Lynch*, 846 F.3d 351, 363 (9th Cir. 2017).

To determine plausibility when evaluating a collateral attack, the court "look[s] to the law at the time of the deportation hearings to determine whether an alien was eligible for relief from deportation."  *Gomez*, 757 F.3d at 899.  The court examines "whether aliens with similar circumstances received relief."  *United States v. Gonzales-Flores*, 804 F.3d 920, 927-28 (9th Cir. 2015).

### 2. Defendant's Claim Under the Convention Against Torture

Here, as noted above, Defendant alleges that when he was eight years old, about eighteen years before the 2009 removal, he witnessed an incident in which a family of ranchers broke into his house, threatened his family, and attacked his father with a metal pipe.  Def.'s Decl. ¶¶ 7, 8. Defendant does not cite any other incidents that occurred while he was living in Mexico other than vaguely stating that "[t]hese men attacked other members of my family."  Def.'s Decl. ¶ 9. Defendant does not allege that he personally was tortured or threatened with torture while he was living in Mexico.

Defendant submits a report of a June 2020 interview with Defendant's mother, Ramona Ramirez-Sanchez.  Def.'s Mot., Ex. K, ECF No. 23, at 95.  Ramirez-Sanchez stated that the five to seven men who broke into the family's house are members of a local family with ties to the government, and one of the men is a government employee.  *Id.*  Ramirez-Sanchez stated that her family "has been terrorized many times since the incident," but does not specify the date or details of these alleged incidents, other than stating "members of the same group attacked her

nephew" the week before the interview was taken. *Id.* She stated that her family "could not and did not reach out to the police for fear of much larger repercussions for their family." *Id.* Defendant also submits exhibits indicating that Mexico was suffering from ongoing armed violence between the government and drug cartels in 2009. Def.'s Reply, Exs. O, P, & Q.

Defendant has not shown that he had a plausible claim for relief under the Convention Against Torture. As the government notes, Defendant denied under oath in 2008, 2010, 2016, and 2016, that he feared persecution or torture if removed to Mexico. Now, more than ten years after his 2009 removal, Defendant contends he would have sought deferral under the Convention Against Torture despite consistently denying fear of torture or persecution.

Defendant has not cited any case in which a person alleging similar facts was granted deferral of removal under the Convention Against Torture. On the other hand, the government has cited decisions upholding denial of relief under CAT under similar or more egregious facts than Defendant alleges here. *See, e.g.*, *Gomez-Fernandez v. Barr*, 969 F.3d 1077, 1091 (9th Cir. 2020) (upholding denial of CAT relief when petitioner himself was not tortured, although his sister's family was harmed; holding that "speculation that the same individuals who targeted his family members in 1996 would target him now if he returned is insufficient to meet his burden"); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018) (upholding denial of CAT relief when petitioner testified to murders of family members and presented "general evidence of human rights violations in Mexico," but failed to show particular likelihood of torture).

I also find that Defendant's claim that one of the men who attacked his family was a government employee is not sufficient to show government involvement or acquiescence in the alleged attack. There is no indication that the attackers had any specific animus toward Defendant. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1029-30 (9th Cir. 2019) (upholding

13 -   OPINION AND ORDER

denial of CAT relief when petitioner, a police officer, was threatened by cartel members, but had "not been tortured in the past, nor has he shown that it is more likely than not he will be subjected to torture by or with the acquiescence of a public official," and "there is no evidence or claim that anyone has sought him or has any continuing interest in him since he departed Villa Hidalgo.").

As noted, Defendant also relies on reports concerning the ongoing violence between the government and drug cartels throughout Mexico. Def.'s Mot., Exs. M, P; Def.'s Reply, Exs. O, P, Q. Defendant argues that in 2009, he was "[f]acing removal to a country that was at the time undergoing unprecedented military conflict between the government and rival drug cartels in every region," and "his family was the target of violence from at least one government official." Def.'s Reply 12. However, Defendant has not presented evidence that the violence his family has allegedly suffered was related to the ongoing armed conflict between the government and drug cartels. A general risk of violence is insufficient to show that Defendant would face an individual risk of torture if returned to Mexico. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (upholding denial of CAT relief when evidence of violence and crime in Mexico was not specific to petitioner and did not show torture was more likely than not). I conclude that Defendant has failed to show that it is plausible he could have obtained deferral of removal under the Convention Against Torture. Defendant has not shown that the 2009 removal proceedings were fundamentally unfair, so I deny the Motion to Dismiss.

## CONCLUSION

Defendant's Motions to Dismiss in 19-cr-00344-JO, ECF No. 23, and in 16-cr-00162-JO, ECF No. 47, are DENIED.

IT IS SO ORDERED.

14 -   OPINION AND ORDER

DATED this 24th day of November, 2020.

/s/ Robert E. Jones
Robert E. Jones
United States District Judge

15 - OPINION AND ORDER